Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5841 | **DATE** | 9/17/2001 |
| **CASE TITLE** | SALVADOR MARTINEZ, et al vs. GARY DEL RE | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant Gary Del Re's motion for summary judgment is granted and Counts III and V are hereby dismissed. Further, having dismissed all claims over which this court has original jurisdiction, Counts IV and VI are also dismissed. Because the remaining Counts I, II and VII have already been dismissed, there remains no further issues before the Court, and this case is hereby terminated.

(11) ■ [For further detail see

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 1 8 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | 01 SEP 18 AM 8:30 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

SALVADOR MARTINEZ,  )
JUDITH KONSTANS, and )
CHRIS KONSTANS, )
 )
      Plaintiffs, )
 )
 ) 98 C 5841
 ) Judge Ronald A. Guzmán
 )
GARY DEL RE, individually, )
and in his official capacity as )
SHERIFF OF LAKE COUNTY, )
 )
      Defendant. )
DOCKETED SEP 18 2001

## MEMORANDUM OPINION AND ORDER

Plaintiffs Salvador Martinez, Judith Konstans ("Judith"), and Chris Konstans ("Chris") filed suit against defendant, Gary Del Re, both individually and in his official capacity as Sheriff of Lake County pursuant to 42 U.S.C. § 1983 and the Illinois Employees' Political Rights Act, 50 ILL. COMP. STAT. 135/1 *et seq.* Plaintiffs allege that Del Re infringed upon their First Amendment right to freedom of speech when he terminated Judith Konstans, allegedly for supporting his opponent in the Republican primary election for Sheriff, and banned deputy sheriffs from visiting Chris Konstans' gas station while on duty, except to respond to calls for police service. The Court has granted summary judgment as to Counts I and II, the counts brought by plaintiff Salvador Martinez, and he has been terminated as a party. Count VII has been voluntarily dismissed by plaintiffs. Defendant now moves for summary judgment, pursuant to FED. R. CIV. P. 56, as to the remaining counts, claiming that he fired Judith Konstans for constitutionally unprotected speech, or alternatively that plaintiffs have failed to establish that Del Re knew of the constitutionally protected speech. Defendant also claims, in his official



capacity, that he is entitled to qualified immunity. For the reasons set forth herein, the motion is granted.

## FACTS

The undisputed facts are taken from the parties' Local Rule 56.1(a) & (b) statements of material facts as follows.

The Lake County Sheriff's "Marine Unit" patrols the Fox Chain-O-Lakes, numerous inland lakes, and Lake Michigan along the County shoreline. (Def.'s LR 56.1(a)(3) ¶ 6.) The Marine Unit is primarily staffed by seasonal part-time sheriff's deputies. (*Id.* ¶ 7.) On April 6, 1996, plaintiff Judith Konstans applied for a job as a part-time dispatcher with the Lake County Sheriff's Marine Unit. (Pls.' LR 56.1(b)(3)(B) ¶ 2.) While filling out the application, Judith Konstans asked Willie Smith, ("Smith") then Chief of the Marine Unit, how she should answer the question pertaining to her current employment position, since she did not have an actual job title. (*Id.* ¶ 3.) Because Smith knew that Judith clerked at the All-in-One gas station and convenience store that her husband owned, he told her to write "co-owner" on her employment application, telling her that the application was just a formality to file. (*Id.* ¶ 4.) Smith then hired Judith to work for Lake County Sheriff's Office Marine Unit as a dispatcher. (*Id.* ¶ 5.)

Chris Konstans purchased the All-in-One store in May 1990. (Def.'s LR 56.1(a)(3) ¶ 14.) Lake County Sheriff's deputies would visit the All-in-One store on a daily basis. (*Id.* ¶ 15.) Several months after Chris purchased the All-in-One store someone posted over the cigarette rack a photograph of one of the Lake County Sheriff's deputies. (*Id.* ¶ 17.) From that point on there was always some kind of photograph or photographs over the cigarette rack, which came to be known as the "Wall of Shame." (*Id.* ¶¶ 18, 20.) There was almost always a posting about

2

some member of the Lake County Sheriff's police. (*Id.* ¶ 21.) Anyone who wanted to post something on the Wall of Shame could do so, including Chris Konstans, members of the public, and deputies of the Lake County Sheriff's office. (*Id.* ¶ 22) Judith Konstans states that she did not post anything up on the Wall of Shame. (*Id.* ¶ 23.)

Judith supported Del Re's opponent in the 1998 Republican primary, Willie Smith ("Smith"). (Def.'s LR 56.1(a)(3) ¶ 72.) She gathered signatures for Smith's petitions, posted signs for him, and went door to door in neighborhoods handing out his literature and fliers. (Pls.' LR 56.1(b)(3)(B) ¶ 7.) On March 17, 1998, Del Re won the Republican Primary election by prevailing over Willie Smith. (Judith Konstans' Dep. p. 40.) In early April 1998 Deputy Gregory Guntharp told Del Re that his wife, Sandy, had visited the All-in-One store, had seen at the store posted above the cigarette board material she found to be highly offensive, and that Guntharp had subsequently visited the store, had seen the postings, and had also found them to be offensive. (Pls.' LR 56.1(b)(3)(B) ¶ 25.) He described the postings and how he found them to be offensive in their depictions of uniformed members of the Sheriff's office. (*Id.* ¶ 26.) Guntharp also informed Del Re that the owner of the store was a part-time marine unit deputy named Judith Konstans. *Id.*

Del Re dispatched Guntharp and Mary Carmody, a police photographer, to take photographs of what Guntharp had seen. (*Id.* ¶ 27.) Del Re then observed the photographs and was offended at what he saw. (*Id.* ¶ 29.) Del Re made a tentative decision to terminate Judith Konstans but wanted to see the postings firsthand before making a final decision. (*Id.* ¶ 30.) He went to the store on April 10, 1998, where he observed a vehicle in the parking lot with a Sheriff's jacket inside it. (*Id.* ¶¶ 31-32.) When he went into the store he observed the postings that had handwritten captions. (*Id.* ¶ 33.) Del Re thought some of the postings were offensive to

the Sheriff's department and was outraged at the depiction of uniformed deputies in the captions. (*Id.* ¶ 34.) Among the postings which Del Re contends he found offensive was a photograph depicting deputy sheriff of Lake County "Kussman," which he interpreted as implicating that Kussman obtained his job through political patronage or political motivation, or that he bought his job.[1] (*Id.* ¶¶ 36-39; *see also id.* ¶¶ 40-66.)

When Del Re viewed the postings at the All-in-One he approached the clerk, Bonnie Schneider, and asked her if she was the owner of the store. (Def.'s LR 56.1(a)(3) ¶ 67.) He had not met Judith Konstans before. *Id.* Schneider replied that she was not the owner, and Del Re asked if the owner worked for the Marine Unit. *Id.* She replied that Judy did. *Id.* Del Re informed her that Judy was fired and left his card. *Id.* He then ordered Undersheriff Gary Stryker to write a letter of termination to Judith Konstans. (*Id.* ¶ 68.) Also on that same day, Del Re issued a directive to his employees that the All-in-One was off limits to all on duty personnel, except to respond to calls for police services. (*Id.* ¶ 83.)

## DISCUSSION

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the Court why there is no genuine issue of material fact, the non-moving party must go

---

[1] The remaining postings cited by defendant are explored in greater detail below.

beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate through specific evidence that there remains a genuine issue of material fact and show that a rational jury could not return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48. However, a metaphysical doubt will not suffice. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

Section 1983 "creates a federal cause of action for 'the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States.'" *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994)). "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights conferred elsewhere." *Id.* To state a claim under section 1983, a "plaintiff must show (1) action taken under color of state law, . . . [and] (2) a deprivation of a right protected by the Constitution." *Brown v. City of Lake Geneva*, 919 F.2d 1299, 1301 (7th Cir. 1990).

## I. Counts III and V: The *Connick-Pickering* Analysis

In order to establish a section 1983 claim based on the First Amendment, a plaintiff must demonstrate two things. Initially, the court must determine whether the speech is constitutionally protected. In doing so, the plaintiff must show that the speech addresses a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 146 (1983). This is a question of law that the Court is to address. *Id.* at 147 n.10. If this hurdle is cleared, then the court must apply the *Pickering* balancing test to "balance between the interests of the [plaintiff], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205,* 391 U.S. 563, 568 (1968). If the court determines that the speech in question merits First Amendment protection, then the plaintiff moves on to the second part of this analysis, and must show by a preponderance of the evidence that the constitutionally protected speech was a motivating factor in the adverse employment decision. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *see also Thomsen v. Romeis,* 198 F.3d 1022, 1027 (7th Cir. 2000) (stating that plaintiff must establish that defendant would not have taken challenged actions "but for" constitutionally protected conduct). If plaintiff meets this requirement, the burden shifts and defendant must show by a preponderance of the evidence that it would have taken the same actions even in the absence of the protected conduct. *Mt. Healthy,* 429 U.S. at 287; *Johnson v. University of Wisc.-Eau Claire,* 70 F.3d 469, 482 (7th Cir. 1995). Because the parties each allege different sets of postings were the basis for the decision to terminate Judith, we shall examine each separately—first the "Wall of Shame" and then the Willie Smith campaign materials.

### A. Public Concern

The threshold inquiry is whether the Willie Smith campaign postings and the "Wall of Shame" can be "fairly characterized as constituting speech on a matter of public concern." *Connick*, 461 U.S. at 146. To involve a matter of public concern, the speech must relate "to any matter of political, social, or other concern to the community." *Id.* A showing of public concern turns not on the general subject matter of the employee's speech, but on "the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48. In applying the public concern prong of the *Connick* analysis, courts have held that where an employee acts to bring public attention to wrongdoing or illegality in their departments, their speech is of public concern and merits First Amendment protection from unhappy employers. *See Myers v. Hasara*, 226 F.3d 821, 826 (7th Cir. 2000); *see also Marshall v. Porter County Plan Comm'n*, 32 F.3d 1215, 1218 (7th Cir. 1994).

When employee expression cannot be fairly characterized as such, however, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. *Connick*, 461 U.S. at 146. Perhaps dismissal may not be fair, but ordinary dismissals from government service that violate no fixed tenure, applicable statute, or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable. *Id.* If the overriding reason for speech, as determined by its content, form, and context, appears to have been related to speaker's personal interests as an employee, the speech is not of public concern. *See Kokkinis v. Ivkovich*, 185 F.3d 840, 844 (7th Cir. 1999); *see also Kuchenreuther v. City of Milwaukee*, 221 F.3d 967, 975 (7th Cir. 2000); *Hartman v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 4 F.3d 465, 471 (7th Cir. 1993).

7

Plaintiff Judith Konstans indicated on her employment application that she was the owner of the All-in-One convenience store. (Def.'s LR 56.1(a)(3) ¶ 11.) Thus Del Re could reasonably attribute the postings in question to her. Some of the individuals depicted in the postings were deputy sheriffs that, according to plaintiffs, frequented the shop themselves. (Pls.' LR 56.1(b)(3)(B) ¶ 25.) Further, these individuals found the postings humorous. (*Id.* ¶¶ 61-63.) Judging from the evidence presented by both parties, and taking into account the content, form, and context of each statement, it appears that these postings were inside jokes and not an attempt to call the public's attention to some form of wrongdoing by the Lake County Sheriff's department. Therefore it is the determination of this Court that the postings on the "Wall of Shame" are not of public concern and fall outside the protection of the First Amendment.

Most of these postings do not address matters of public concern within the meaning of *Connick*. The first posting in question depicts deputy sheriffs Andy Anderson and Pat Priller in a boat and includes the caption: "Let's see ... T-I-K-No wait ... T-I-C-K-I ... No ... Hey, Andy ...." (Def.'s LR 56.1(a)(3) ¶ 64.) This posting is clearly intended to be an inside joke about Pat Priller's spelling ability and does not addresses a topic of public concern. The second posting is a photograph of an airplane crash, with two Lake County deputy sheriffs standing over the wreckage. There is a dialogue bubble, coming from one of the deputies, which says, "This was no boating accident." (Def.'s LR 56.1(a)(3) ¶ 45.) This also does not appear to be intended to communicate any matter of public concern, save for a few moments of comic relief. Absent any content that does not relate to matters of social or political import, and brought forth in the context of the "Wall of Shame" and other lampoons, it cannot be fairly said that these postings address any topic of public concern.

8

The third through fifth postings contain certain comments about Lake County deputy sheriffs' sexual orientation. The first posting depicts deputy sheriffs beside a lake, and includes the following captions: "Guess what I'm doing with my hands... My name is Greg Swanson. I never knew O'Connell had such a nice ass!" (Def.'s LR 56.1(a)(3) ¶ 60.) This posting seems to be suggesting that a Lake County deputy sheriff is engaging in a certain form of sexually aggressive behavior. Clearly this message, making allegations about an individual officer's sexual orientation, is not of any public concern. The fourth posting depicts Lake County deputy sheriffs, one of whom seems to be saying, "I wish Kussman would pay me!" and "I took this job because I'm attracted to men in uniform." This posting seems to be making allegations about a certain sheriff's sexual orientation, which is again clearly intended as a joke and not of public concern. The fifth posting is another photograph of a Lake County deputy sheriff standing next to a neighborhood watch sign, containing the caption, "I'm such a fag" with the word "fag" scratched out. On the sign are the words, "Say no to Gary." Again, this posting seems to be questioning the sexual orientation of the officer in the photograph, and expressing displeasure for the defendant, Sheriff Del Re. The content of these postings relates to the sexual orientation of certain Lake County deputy sheriffs, which is not of public concern. Further, the presentation of this material in the context of the "Wall of Shame" implies that it is intended to be humorous, or some kind of inside joke.

The remaining postings contain elements that could possibly be construed as dealing with matters of public concern. In this circuit, however, precedent makes clear that speaking up on a topic that may be deemed one of public importance does not automatically mean the employee's statements address a matter of public concern as that term is employed. *Kokkinis*, 185 F.3d at 844. Rather, we "must instead delve deeper into the precise content, form, and context of speech

that admittedly may be of some interest to the public." *Id.* "Was it the employee's point to bring the wrongdoing to light? . . . Or was the point to further some purely private interest?" *Id.*

The sixth posting depicts deputy sheriff of Lake County Kussman and includes the captions, "How he got his hack job" and "Show me the money," apparently suggesting that Kussman obtained his job through political patronage. According to plaintiffs' own statement of facts, Kussman himself understood this posting to be a humorous personal joke. (Pls.' LR 56.1(b)(3)(B) ¶ 61.) The seventh posting is a cartoon depicting a dummy in a police car sitting in the driver's seat. (*Id.* ¶ 41.) The caption reads, "I can't believe that Kussman keeps his job!" and a newspaper with the headlines "Deputy hiring biased." *Id.* Although the reputation and honesty of police officers is usually a matter of public concern, when presented in the context of the "Wall of Shame" and all other postings, it appears that this was intended as an inside joke for the purposes of entertainment, not to bring wrongdoing to light, and thus outside the meaning of public concern in *Connick*.

The final posting is a photograph of Defendant Del Re shaking hands with a judge, with his wife and Bob Depke, then County Board chairman. The caption depicts Del Re saying, "Thanks, there will be a little something in your stocking at Christmas." (*Id.* ¶ 49.) This posting appears to be implying that Del Re had engaged in some form of bribery with a local court official. The content of this posting addresses the honesty and reputation of police officers, and bribery of court officials, which is of paramount public concern. "[D]emocracy is effective only if the people have faith in those who govern, and that faith is bound to be shattered when high officials and their appointees engage in activities which arouse suspicions of malfeasance and corruption." *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 562 (1961). The form of this posting, namely a photograph with dialogue bubbles written in, also does not

10

remove it from the realm of public concern, *per se*. However, Mr. Konstans admitted in his deposition that the only purpose for the allegation of bribery was to be humorous, and not to further any political goal, nor to comment on Del Re's performance as Sheriff of Lake County. (C. Konstans Dep. at 56-57.) When presented in the context of the "Wall of Shame," in light of Chris Konstans' statements, and with no evidence presented to refute the conclusion, it appears that this posting was also not intended to bring any public wrongdoing to light but rather to further a private goal of expressing some displeasure with Del Re.

Turning to the Willie Smith campaign materials, we find a different situation altogether. It can be fairly said that they address matters of "public concern." *Connick*, 461 U.S. at 146. Campaign material, in support of a candidate for the Sheriff of Lake County, clearly touches upon a matter of political concern to the community because it seeks to inform and influence the public's decision about the county's top law enforcement official. Thus we move on to the second prong of the "protected speech" test, the *Pickering* balancing test.

### B. The *Pickering* Balancing Test

If we conclude that a public employee's speech touches on a matter of public concern, we must then "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs." *Pickering*, 391 U.S. at 568. In applying the *Pickering* balancing test, the court is to consider seven factors when balancing the employee's First Amendment interests against the government's interest in providing services efficiently:

> (1) whether the statement would create problems in maintaining discipline by immediate supervisors or harmony among co-workers; (2) whether the

11

employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her daily responsibilities; (4) the time, place, and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decisionmaking; and (7) whether the speaker should be regarded as a member of the general public.

*Caruso v. DeLuca*, 81 F.3d 666, 670 (7th Cir. 1996). Even if we assume, however, that plaintiffs' interest as citizens outweighed the Lake County Sheriff's Department's interest as an employer, the case would still fail because plaintiffs are unable prove that the campaign materials were present when visits were made to the All-in-One and thus were a motivating factor in his decision to fire Judith.

## II. Protected Speech as a Motivating Factor

The second phase of our inquiry focuses on whether plaintiffs have established a genuine issue as to a material fact that at the time Del Re visited the All-in-One, he either knew about the Konstans' support of Willie Smith, or saw the campaign material there. It is undisputed that firing a public employee because of his or her political affiliation violates the First Amendment and is actionable under section 1983, unless political loyalty is an appropriate qualification for the job. *See Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1080-81 (7th Cir. 1992) (citing *Elrod v. Burns*, 427 U.S. 347, (1976), and *Branti v. Finkel*, 445 U.S. 507 (1980)); *see also Bd. of County Comm'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 674-75 (1996) (collecting cases). Political loyalty is an appropriate qualification for employment when it is "essential to the discharge of the employee's governmental responsibilities." *Branti*, 445 U.S. at 518. Although

12

defendant does not advance the argument, the Court notes for purposes of this analysis that party affiliation is not an appropriate job requirement for dispatchers, such as Judith Konstans. *Zorzi v. County of Putnam,* 30 F.3d 885, 892 (7th Cir. 1994).

Plaintiffs maintain that Judith Konstans was fired not for the postings on the "Wall of Shame" but for her support of Del Re's opponent in the March 1998 Republican Primary election for Sheriff of Lake County. The Konstans cannot prevail unless they establish that the defendant was motivated by constitutionally protected speech. *Mt. Healthy,* 429 U.S. at 287. Even if the plaintiffs meet this hurdle, Del Re can still prevail if he can show that absent the constitutionally protected speech, he would have still fired her. *Id.*

On March 17, 1998, Del Re won the Republican Primary election by prevailing over Willie Smith. (J. Konstans Dep. p. 40.) Judith Konstans states that on or around a week later, she removed the Smith campaign bumper stickers from her car. (*Id.* at 41.) Regarding the rest of the campaign materials, she does not recall exactly when the materials were taken down; she can recall that the signs in front of the gas station and in the windows were ultimately taken away, by whom and when she cannot recall. (*Id.* at 41-42.) According to her, they may have been taken down right away, or a week later. *Id.* In early April, deputy sheriff Guntharp told Del Re that he and his wife had observed several postings in the All-in-One which he found to be offensive and disparaging toward the Sheriff's department and that Judith Konstans was an employee there. (Def.'s LR 56.1(a)(3) ¶ 26.) Del Re then dispatched Guntharp and a police photographer to document what he had seen. (*Id.* ¶ 27.) Del Re made a tentative decision to fire her but apparently wanted to see the postings for himself, which he did on April 10, 1998. (*Id.* ¶ 31.)

In response to the summary judgment motion, plaintiffs must raise a genuine issue as to a material fact regarding whether the Willie Smith campaign materials were a motivating factor in Del Re's decision to fire Judith. We hold that they have not done so here. Del Re maintains that he saw no campaign material for Willie Smith on April 10, the day he visited the All-in-One convenience store, and because he was unaware of such material, he did not rest his decision on that basis. He also maintains that before this incident, he never met her. (Def.'s LR 56.1(a)(3) ¶ 69.) Plaintiffs give no specific time line indicating when the campaign materials were posted, stating only that they were taken down about a week or so afterwards. (Judith Konstans' Dep. pp. 41-42) The most we can infer is that the materials remained up a week after the election, which would put the removal at March 24, 1998. However, deputy Guntharp and his wife visited the All-in-One in early April, and to infer that the campaign materials were up for any longer would require an unreasonable inference that the Court is simply unwilling to make. Although we are required to read the record in the light most favorable to the non-moving party, we are not required to draw unreasonable inferences from the evidence. *St. Louis N. Joint Venture v. P & L Enters., Inc.,* 116 F.3d 262, 265 n.2 (7th Cir. 1997).

Even assuming that plaintiffs could raise a genuine issue as to whether Del Re was aware of the Smith campaign materials and that it was a "motivating factor" in Judith's termination, plaintiffs case would fail because they ultimately cannot prove causation. A defendant can still prevail, even where the plaintiff has shown that his conduct was constitutionally protected and was a "motivating factor" if he can show that even in the presence of the protected speech, he would have made the same adverse employment decision. *Mt. Healthy,* 486 U.S. at 287. Sheriff Del Re has maintained from the beginning that he never based his decision to fire Judith on the Willie Smith campaign materials, but rather the unprotected speech found on the "Wall of

14

Shame" because he found the Wall of Shame comments were offensive and interfered with the maintenance of morale and discipline in the Sheriff's Department. The record before the Court establishes that it is more likely than not that the campaign materials were not present during the visits to the All-in-One by the Guntharps, Carmody, and Del Re because (1) none of these visitors reported seeing the campaign materials; (2) even Judith cannot be sure that the campaign materials were present during these visits; (3) it would be unreasonable for the Court to infer that the Willie Smith campaign materials would still be present over a week and a half after Smith lost the primary election; and (4) there is no evidence that Del Re was aware of the fact that Judith Konstans campaigned for Smith or posted Willie Smith campaign materials anywhere. Thus there is ample support for the Court's conclusion that Del Re has shown by a preponderance of the evidence that he would have fired Judith even in the absence of the protected speech.

### III. Chris Konstans' Claims

Plaintiff Chris Konstans bases his claims upon the same set of facts as does his wife and co-plaintiff, Judith. He contends that Defendant's decision to terminate Judith Konstans, and his subsequent decision to make the All-in-One off limits to on duty personnel was motivated by Plaintiffs' support of Willie Smith. He also contends that this decision was based upon constitutionally protected speech contained in the "Wall of Shame."

This claim must also fail, however, for the same reasons. Plaintiffs have not met their burden of showing that constitutionally protected speech played a substantial role in the decision to terminate Mrs. Konstans or make the All-in-One off limits to on duty personnel. Defendant based his decision on the unprotected speech found on the "Wall of Shame." Further, Plaintiffs have also not met their burden of showing how Willie Smith campaign materials, or any other

15

constitutionally protected speech, could have played a role in the decision because they are unable to establish that it was present at the time Del Re learned of the "Wall of Shame." Even if plaintiffs were able to show that the Smith campaign materials were present, Defendant has shown, by a preponderance of the evidence, that he would have reached the same decision even in the presence of the constitutionally protected material. *Mt. Healthy*, 429 U.S. at 287. As such, Chris Konstans' claim pursuant to section 1983 is dismissed.

## IV. Counts IV and VI: Supplemental Pendant State Law Claims

Counts IV and VI of the amended complaint purport to state a cause of action pursuant to the Illinois Employees' Political Rights Act, 50 ILL. COMP. STAT. 135/1 *et seq*. Jurisdiction for these claims is brought before the Court under supplemental jurisdiction. 28 U.S.C. § 1367. Federal courts may extend jurisdiction if the state and federal claims are derived from a "common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). The Court's decision as to whether to exercise supplemental jurisdiction should be based on the course that "best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997). However, once all federal claims have been dismissed, a district court may decline to extend jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). Because the Court has dismissed all federal claims, we decline to exercise supplemental jurisdiction over Counts IV and VI.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted [doc. no. 56-1], and Counts III and V are hereby dismissed. Further, having dismissed all claims over which this court has original jurisdiction, Counts IV and VI are also dismissed. Because the remaining counts, Counts I, II, and VII have already been dismissed, there remains no further issues before the Court, and this case is hereby terminated.

**IT IS SO ORDERED** 9/17/01

ENTERED:

HON. RONALD A. GUZMAN
**United States Judge**